**FERRIE, Plaintiff v. SWEENEY, et., Defendants.**

Common Pleas, Cuyahoga County.

No. 564,259. Decided June 26, 1946.

Burgess, Fulton & Fullmer, Cleveland, for plaintiff.

Lee C. Howley, Director of Law, Joseph H. Crowley, Chief Counsel, James M. McSweeney, Assistant Director of Law, Cleveland, for defendants.

Howard M. Metzenbaum, Cleveland, Amicus Curiae.

## OPINION

By McNAMEE, J.

Plaintiff, as a taxpayer and resident of the city of Cleveland, seeks to restrain the defendants Joseph T. Sweeney and Edward L. Worthington, Directors of Finance and Public Welfare of the city of Cleveland respectively, from further expenditures of public funds for the operation and maintenance of day care centers for children of working mothers. These day care centers were established and maintained by the Federal government during the war, and at its sole expense pursuant to authority conferred by the Lanham Act 42 U.S.C.A. Their manifest purpose was to provide adequate and proper care for children while their mothers were engaged in work essential to the effective prosecution of the war.

·On February 29th, 1946, the Federal government discontinued its financial support of these institutions. At or about that time the Council of the city of Cleveland enacted Emergency Temporary Ordinance No. 552-46 appropriating $20,000 for the operation of these day care centers "for a period not exceeding thirty days pending a determination of legal and administrative problems arising from discontinuation of Federal support for such service." On April 8th the City Council passed Emergency Ordinance No. 908-46 appropriating $20,000 for the same purpose, "for a period not extending beyond April 30, 1946," and "until proper administrative responsibility is determined."

On April 29th, Emergency Ordinance No. 1056-46 was passed by the Council appropriating the sum of $10,000 for the purpose of operating these day care centers for a period not later than May 31, 1946, and "until proper administrative responsibility is determined." After the passage of the last mentioned ordinance, to-wit on May 16th, 1946, plaintiff filed his petition·

herein. Before this cause came on for trial the City Council passed Emergency Ordinance No. 1293-46. Each of said ordinances authorizes and directs the defendants herein in their official capacities to make available and to incur obligations against the designated amounts referred to for the purpose of operating said day care centers. By leave of court plaintiff filed his supplemental petition incorporating the terms of Ordinance No. 1293-46. The issues raised relate only to this ordinance. The three predecessor ordinances have by their terms expired and the issues raised have become moot as to them.

The ordinance in question does not limit the services of the day care centers to children who are in need of the protective care these institutions afford. By the terms of the ordinance public funds are appropriated for the operation of these day care centers irrespective of the economic or marital status or financial need of working mothers. In this respect the day care centers are operated in the pattern established by the Federal Government when it financed and operated these centers pursuant to its duty to "provide for the common defense."

The evidence discloses the following pertinent facts relative to the parents and families of children who are receiving the services of the day care centers; 179 families have a monthly income of less than $150; the monthly income of 30 families in this group is less than $100; 203 families have a monthly income of over $200, 21 of whom have monthly incomes that exceed $350,—of this latter number 9 families have monthly incomes in excess of $400; 173 families have both parents in the home, of these 144 fathers are employed; 146 families have only one parent in the home. The mothers pay 75c per day for the care of each child. This, of course, is substantially less than the actual cost thereof.

It is plaintiff's contention that—

"Said centers do not render any service of charity but only a service of convenience to their patrons and appropriations of the city taxpayers' money for their maintenance and operation, without an express statutory grant, are unlawful and constitute an attempt to supply public funds for a private purpose in competition with private enterprise."

Defendant asserts:

"The day care centers serve a public purpose and furnish a temporary relief in a time of emergency and, therefore, need not to have been established by virtue of a statutory grant."

Defendant relies principally if not entirely upon the pro-

position that the operation of these day care centers is a valid exercise of the City's powers of local self government. **Article XVIII, Section 3** of the **Ohio Constitution** provides:

"Municipalities shall have authority to exercise all powers of local self government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

In defining the powers of local self government conferred by the above quoted constitutional provision, the Supreme Court in **Billings v R. R. Co., 92 Oh St 478**, said:

"The charter of a city which has been adopted in conformity with the provisions of **Article XVIII**, and which does not disregard the limitations imposed in that article or other provisions of the constitution, finds its validity and its vitality in the constitution itself and not in the enactments of the general assembly. The source of authority and the measure of its extent is the constitution. The powers conferred by such a charter, adopted within the limitations stated, are not affected by the general statutes of the state."

In **Perrysburg v Ridgeway, 108 Oh St 245**, the court declared:

"The sovereign people of the state expressly delegated to the sovereign people of the municipalities of the state, full and complete political power in all matters of local self government."

The foregoing declarations of the Supreme Court defining the municipal powers of local self government as deriving from the constitution relate only to those governmental functions of municipalities which are of purely local concern. The powers conferred upon municipalities by **Article XVIII, Section 3,** of the **Constitution** are not efficacious to erect sovereignities within the state equal in governmental power to the State of Ohio itself. In relation to matters of statewide concern the State remains supreme, and as to such matters municipalities are political agencies of the State. This view is well expressed in **State ex rel., v French, 96 Oh St 172**, wherein the court, at **page 184**, of the opinion says:

"The authority given by **Article XVIII of the Constitution** to adopt a charter, and exercise thereunder all powers of local

self-government, is manifestly limited to matters of purely local and municipal concern. No power is thereby granted to legislate upon or interfere in any way with the affairs of the state government. The municipality, as well after as before the adoption of a charter, is an arm—apart—of the State."

The same doctrine is announced in **Billings v Railway Co.,** supra,

"This involves no lack of harmony that is essential and no loss by the state of its proper authority over the city and its people. The charter becomes the organic law of the municipality so far as such local powers are concerned. But the authority of the state is supreme over the municipality and its citizens as to every matter and every relationship not embraced within the field of local self-government."

That the granting of relief to the poor and needy, and providing for the care and welfare of children are matters of state wide concern admits of no debate.

The second paragraph of the syllabus of **Ranz v Youngstown, 140 Oh St 477,** reads:

"The relief of the poor is a state function, and authority for levying taxes or expending public funds therefor by local authorities must be found in general laws enacted by the general assembly."

State concern for the care and welfare of children is expressed in §1359-31 GC et seq., which provides for aid to dependent children, and in the broad comprehensive general laws on the subject of child welfare contained in §§3070-1 GC to 3070-36 GC, inclusive, effective January 1st, 1946, §3070-1 GC discloses the purpose of the act as follows:

"Sec. 3070-1. The purpose of §§3070-1 to 3070-35, inclusive, is to supplement, expand, modernize and integrate child welfare services and the care and placement of children in the several counties of the state, and to this end this act shall be liberally construed."

Sec. 3070-2 GC, which defines the various terms used in the act includes "day nurseries" as institutions embraced within the term "organization."

Sec.. 3070-3 GC reads:

"The powers and duties enumerated in §§3070-17 to 3070-20, inclusive, GC, with respect to the care of children, needing or likely to need public care or services, shall be vested in a single agency of county government, namely, either in a county department of welfare or a county child welfare board, in the manner hereinafter set forth."

Sec. 3070-17 GC, which enumerates the powers and duties of the county child welfare board conditions the exercise of such powers and duties upon the following terms.

"The Child Welfare Board shall, subject to the rules, regulations and standards of the division, have the following powers and duties for and on behalf of children in the county deemed by the Board to be in need of public care or protective services."

In an opinion of the Attorney General, No. 769, dated March 2nd, 1946, the following statements appear in the syllabi:

"1. A Child Welfare Board may establish and maintain Day Care Centers for children of working mothers.
"2. These Day Care Centers may extend their services only to children in need of protective care whose mothers are compelled to work by reason of financial necessity and whose mothers are not financially able to provide private care for their children."

In his Opinion the Attorney General said:

"Unlike §1359-32 GC, which limits aid to a child 'deprived of parental support or care,' §3070-17, GC, conditions the exercise of powers by the child welfare board only in respect to its finding that a child is 'in need of public care or protective services.' Such a determination is essential to the validity of the exercise by a child welfare board of any of the powers conferred upon it. It is, of course, incumbent upon the board to make this determination. To find that a child is in need of public care or service in a case where a working mother is possessed of ample means to provide the necessary care for her child without public assistance, would, in my judgment, be an abuse of the discretion conferred upon the board by the statute."

Sec. 3070-20 GC provides in part:

"The board shall, before entering into any agreement obligating the board with respect to the care of any child, determine the ability of the child, parent, guardian or other person to pay for the cost of such care, having due regard for other dependents."

The general assembly has declared in clear and unambiguous terms that the County Child Welfare Board is subject to the rules and regulations of the State Division of Social Service in determining whether children are in need of the public care or protective service provided for in this act. The Legislature has likewise imposed the mandatory duty upon the Child Welfare Board of determining the ability of parents or guardians of children to pay the cost of such care as a prerequisite to the rendering of the services authorized by the act. Authority is conferred in the act on the county agency to enter into an agreement with any municipality respecting the operation or maintenance of any children's home, training school or other institution for the care of children, etc.

It is not here considered or decided whether a municipality may operate a day nursery otherwise than by agreement with the County Child Welfare Board. However, an ordinance which appropriates public funds for the operation of day care centers for the benefit of working mothers, irrespective of their ability to pay the cost thereof, is repugnant to the clear provisions and plain purpose of the child welfare act.

"An essential requirement of a valid ordinance or other measure is that the provisions thereof shall not conflict with any positive provision of the State or Federal Constitution, of the general law, or of the municipal charter, or infringe upon the spirit or be repugnant to the policy thereof." **28 O. Jur. Sec. 277, page 442.**

It has been held·that the provisions of the Home Rule Amendment do not deprive the State of any sovereignty over municipalities in respect to sanitation for the promotion or preservation of the public health which it elects to exercise by general laws.

**State ex rel Cuyahoga Heights, v Zangerle,**
**103 Oh St 566;**
**Bucyrus v State Department of Health,**
**120 Oh St 426.**

It has also been held that the adoption of the Home Rule

Charter does not relieve a municipality from the operation of a general law providing sanitary, safety and similar regulations effective throughout the state. **Niehaus v State, 111 Oh St 47; The Board of Health v State, 40 Oh St 77; 28 O. Jur. Sec. 120, page 231.**

It seems clear, therefore, that the city of Cleveland, in legislating upon the subject of child welfare is governed by the powers and limitations contained in the general laws on the same subject. The municipality may not bypass the salutary provisions of the child welfare act designed to safeguard the interests of the taxpaying public, and which condition the grant of care and protective services upon the determination of the need therefor.

In view of the fact that the powers and duties of the "single agency of county government" are not limited to the care of children in counties outside municipalities, it is difficult to find any rational basis for the view that child welfare is a matter of municipal and local concern. Indeed the provisions of §3070-29 GC requiring officers and employees of municipalities to report to the county agency respecting any child deemed to be in need of public care would seem to dispel all doubt on that issue. Sec. 3070-29 GC provides in part:

"Township trustees, the superintendent of any county home and other officers and employees of any county, municipality or other political subdivisions of the state are hereby required to make a report to the board respecting any child in the county coming to their attention, deemed to be in need of public care."

By virtue of this and other sections of the child welfare act the state has clearly evidenced its intention to occupy the entire field of child welfare.

A principle firmly imbedded in our jurisprudence is that public funds may not be expended for a private purpose:

**Cleveland v Ruple, 130 Oh St 465;**
**State ex rel v Edmondson, 89 Oh St 351;**
**Lucas County v State, 75 Oh St 114;**
**Board of Education v State, 51 Oh St 551.**

In **Lucas County v State,** supra, the Supreme Court held an act providing relief for the worthy blind to be unconstitutional for the reason that it required the expenditure for a private purpose of public funds raised by taxation. Among the reasons assigned by the court for its decision is the following appearing on page 135 of the opinion:

"The act does not direct that the payment shall continue during the lifetime of the beneficiary, nor does it limit the time, nor provide that payments shall cease with the needs of the donee, or provide for any subsequent inquiry. It is an indeterminate, gratuitous annuity, a gift pure and simple, and deemed so, the Legislature is without authority to make it from the public funds."

In **Edmondson v State**, supra, the Supreme Court in reviewing two laws enacted for the relief of the blind held one constitutional and the other to be in contravention of constitutional requirements. The second paragraph of the syllabi of that case reads:

"The act of April 28, 1913, 'to create an institution for the relief of the needy blind,' requires the expenditure of public funds raised by taxation, for a private purpose and also violates **Section 5 Article XII** of the **Constitution**. It is, therefore, unconstitutional and void."

In commenting upon the provisions of the law held unconstitutional the court at **page 362** of the opinion said:

"There is a broad provision in **Section 5** that any person, who, by reason of loss of eyesight, is unable to provide himself or herself with the necessaries of life and has not sufficient means of his or her own so to do, shall be entitled to the benefits of the law. Therefore, such a person, although he might have children who would be able and be compelled by law to support him, or who actually would be supporting him, or who might have friends or relatives who would be willing to support him, or who would be actually doing so at the time, would still be entitled to receive payment under the law. In such a case the payment of the money would not be said to be a public object, but would be, as said in the Lucas County Case, the giving of a bounty pure and simple to one who had no real need for it in order to prevent his becoming a charge upon the public."

Similarly the bestowal of care at public expense to children of those whose financial condition does not require it, is an expenditure of public funds for a private purpose.

The current trend of legislation by all governmental subdivisions designed to alleviate distress and to minimize the hardships resulting from the vicissitudes of modern life, is too well known and generally approved to warrant extended comment here. The extension of governmental activity into the

field of social service marks the advance of an enlightened and humane civilization. But taxpayers, who for the most part are citizens of modest means, have a preferential claim upon governmental consideration. Without them and their contributions government could not exist. To the extent that the taxpayer is relegated to the status of the "forgotten man" the ability of government to fulfill its essential functions, including relief and care of the needy is diminished correspondingly.

The duty to conserve tax funds for proper governmental functions is constant and imperative.

The terms of the ordinance which provides for the temporary operation of the day care centers for the time therein specified, and "until proper administrative responsibility is determined" merit brief comment. There is no responsibility upon the administrative branch of any political subdivision to operate day care centers for the benefit of working mothers indiscriminately and without regard for their financial or economic status. It is fair to assume that by the use of the above quoted phrase the Council meant a determination of the responsibility of the public agency charged by law with rendering day care service to children in need thereof. The context of the first ordinance reflects the city's doubt as to its responsibility in the premises. Having undertaken to discharge this responsibilty temporarily the city was required to limit the benefits of the services to those entitled under the law to receive them. No justifiable complaint could be made if, because of the failure or inability of another public agency to discharge its duty, the city assumed temporarily to afford services of day care centers to children of indigent mothers or mothers who would become a public charge if required to quit their employment. Extending the services of these centers without limitation or determination as to need finds no sanction in the law.

For the reasons hereinabove stated the Court holds that the adoption of the ordinance under review by the Council of the City of Cleveland, was not in the exercise of the municipality's powers of local self government; that said ordinance by its terms contravenes the provisions of and is repugnant to the spirit and purpose of the child welfare act (**Sec. 3070-1 to 3070-36 GC**, inclusive).

The defendants are restrained from further expenditure of public funds under the ordinance in question for the maintenance and operation of day care centers therein referred to. Costs, including reasonable attorney fees, are awarded plaintiff. Exceptions allowed to defendants. O. S. J.